James T. Hamilton and Albert Hamilton, trading as J. T.
& A. Hamilton, v. the Pittsburg, Bessemer and Lake
Erie Railroad Company, Appellant.

| 190 | 51 |
| s194 | 14 |
|---|---|
| 190 | 51 |
| d202 | ²297 |
| 190 | 51 |
| 19 SC | ¹308 |

*Railroads—Land damages—Special use of property—Charge of the court
—Business profits—Risk from fire.*

In proceedings against a railroad company for damages for land con-
demned, where the tendency of plaintiffs' evidence is to swell damages by
reason of the special use of the property as a bottling plant, it is not error
for the court to explain to the jury that the question is not as to the value

of the property in the market solely as a bottling plant, but also whether its market value for any purpose has been depreciated by the construction of the railroad.

In condemnation proceedings against a railroad it is error to admit evidence as to the expectation of future profits based upon an estimated saving from the construction of additional buildings which the plaintiffs had contemplated erecting upon the land.

As to risk from fire, incident to the lawful operation of a road, there are two theories on which the claimant for damages can properly argue such risk is material evidence in his favor: (1) He can claim the danger is so imminent that no man of common prudence would maintain his building in such proximity to the railroad. In that case he is entitled to the cost of removal of his building and its reconstruction in a safe place. (2) If the danger be not great either from the fireproof character of the structure or its distance from the railroad yet, if it can still be said there is some risk from fire by reason of the lawful operation of the road, he can claim that that fact depreciates the market value of the land entered upon. On either theory the value of the contents of the building at the time of the construction of the road is immaterial.

In condemnation proceedings against a railroad the plaintiff cannot be asked whether the construction of the railroad will be beneficial to him as an owner. The inquiry must be limited as to whether it will be beneficial to the land.

Argued Oct. 19, 1898. Appeal, No. 131, Oct. T., 1898, by defendant, from judgment of C. P. Butler Co., Sept. T., 1897, No. 24, on verdict for plaintiffs. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from award of jury of view. Before SHAFER, J.

At the trial James T. Hamilton, one of the plaintiffs, in his examination in chief, testified: " Q. In August, 1896, when the defendant company entered on your land, what was the then value of your property? A. Seventy-five thousand dollars. Q. What is it to-day, or what was it immediately after the entry and construction of the road, taking into consideration that the road would be built and operated as it now is? A. I would consider it a depreciation of $30,000."

On cross-examination he testified: " Q. Upon what theory do you say to the jury it has depreciated $30,000? How do you arrive at that depreciation? A. By being deprived of the use of the property. Q. What property are you deprived of the use of? A. On the east side. Q. What use were you making of it at the time the railroad was appropriated. A. We

were planning to build upon it. Q. You based your estimate of the damages upon the fact that you contemplated at some time building there? A. Yes, sir. Q. And that is the way you arrived at the estimate of damages; are you not making as many bottles now as in '96? A. Practically so. Q. When did you contemplate building there? A. A year ago; we had contemplated before the railroad was contemplated. Q. If, because you are deprived of building there, the land has depreciated $30,000, tell us what actual physical damage it had done in '96? A. It spoiled the value by cutting it in two and preventing making use of the property. Q. What kind of a building did you intend to put up? A. Another furnace, at the cost of $8,000 or $10,000, and that would have produced for us double the capacity of the present plant. We had an abundance of gas to run this other plant, which would have been a saving of $1,300 a month; we were deprived of that by this railroad. Q. That profit had not been in any way diminished by the railroad company? A. No, sir. Q. In that $30,000 you take into consideration the future profits you might make by reason of the increase of the plant? A. Yes, sir."

Defendant moved to strike out the testimony of the plaintiff based upon the contemplated building he intended to erect and the amount of money that it would have saved him by reason of having a surplus of gas and the amount of future profits that he contemplated, as speculative, too remote and uncertain.

By the Court: If it appeared that his whole estimate of damage was all upon such things as that, then we would strike it out; I cannot strike out the whole estimate because it is partly wrong; motion refused; if it appeared that this witness had founded his opinion entirely on that, then I would have stricken it out; motion refused and bill sealed for the defendant. [1]

Plaintiffs then offered to prove by the witness that their wareroom, located within six feet of the defendant's right of way, and which wareroom is crossed overhead at that distance by the defendant company's road, is the place where the most danger is in conducting their business, storing large quantities of hay, pine boxes and other inflammable material, for the purpose of showing that the property is in danger of destruction from operation of the road.

Defendants objected to the offer as incompetent and irrelevant, speculative, remote and uncertain.

By the Court: What the plaintiffs actually keep from time to time or quantities that they may keep of such materials is not relevant, but we think that the fact that this warehouse is intended for a certain purpose, namely, the packing of goods, and that the packing and storage of these goods requires the keeping of certain quantities of hay and pine boxes as a part of the necessary operation of that room would be relevant.

" Q. What is this warehouse used for? A. Packing the work as it comes from the factory and storing it afterwards. Q. In the use of this wareroom what material do you necessarily have to have on hand and in what quantities? "

Defendants objected as incompetent and irrelevant, because it is speculative, remote and contingent.

By the Court: It simply goes to show how much danger there is; he is not asking any damages for these particular goods; objection overruled and bill sealed for defendant.

" Q. What sort of material and quantities are necessarily kept in that building in the ordinary use of the premises? A. We use packing hay principally; we buy the packing hay in carloads, and boxes. Q. In what quantities? "

Objected to by defendants as speculative and remote.

By the Court: The court does not understand that this question is asked to show the damage to the quantity of the goods, but merely to show the danger of fire from the ordinary and proper use of the road, and the quantity of material is relevant to the question of amount of danger, as a small quantity of inflammable material cannot produce the same danger as a large quantity; objection overruled and bill sealed for the defendant. [2]

" Q. Is the construction and operation of this road in any way beneficial to your property, or to you as owner? "

Objected to by defendant as incompetent.

By the Court: The real question is whether it is any benefit to the land.

Objection overruled and bill sealed. [5]

"A. It was not beneficial to us in any way. Q. Is it any benefit to the land? A. No."

Defendant's points and the answers thereto among others were as follows:

1. If the jury find that the machinery and buildings of the

plaintiffs' bottling works were not touched by the railroad company, and the operations of the works not interfered with, and the productiveness of the plant not in any way diminished, and the land actually taken by the railroad company was unoccupied, the jury cannot assess damages by reason of the appropriation upon the theory that the value of the bottling plant has been impaired. *Answer:* Affirmed, with this explanation, that the question for you is not the value of this property as a bottling plant, but its value on the market for any purpose and the diminution of such value by the operation and construction of the road. [3]

2. If the jury find that the land appropriated by the railroad company is unoccupied ground, though within the exterior lines of the five acres upon which the bottling plant of plaintiffs is located, and is not used in the actual business of the plant, it is no part of the plant, and the jury cannot assess damages upon the theory that the bottling plant has been impaired. *Answer:* Affirmed, with the same explanation as before; it simply amounts to this, that you are not assessing this as a bottling plant or any other kind of plant; you are not assessing it for that particular purpose, but for whatever purpose, for that or any other purpose it is valuable in the market. [4]

Verdict and judgment for plaintiff for $19,050.90. Defendant appealed.

*Errors assigned* were (1, 2, 5) rulings on evidence, quoting the bill of exceptions; (3, 4) above instructions, quoting them; (6) that the verdict was excessive.

*Levi McQuistion,* with him *J. C. Vanderlin,* for appellant, cited Pittsburg & Western Ry. Co. v. Patterson, 107 Pa. 464; Smith v. Times Publishing Co., 178 Pa. 481.

*Clarence Walker,* for appellee, cited Spring City Gas Light Co. v. Penn. Schuylkill Valley R. R., 167 Pa. 6; Vallo v. U. S. Express Co., 147 Pa. 404.

OPINION BY MR. JUSTICE DEAN, February 20, 1899:

The defendant in the construction of its steam railroad appropriated for its roadbed fifty-three one hundredths of an

acre of plaintiffs' land in the borough of Butler. The appropriation was out of a tract of five acres on which the plaintiffs maintained buildings for the manufacture of bottles. The strip taken was about forty-five feet wide, but no building was touched upon; the land taken was not at the time actually used by plaintiffs for any purpose; the railroad through the tract was constructed upon steel trestles about twenty feet in height, which were about six feet from the building used for storage of material and as a packing room. The decided weight of the evidence showed the vacant land, as land, was not worth in the market for any purpose $1,000 per acre. The plaintiffs claimed that their property as a whole had been largely depreciated in market value by the construction of the railroad. Under the general railroad act and supplements viewers were appointed who assessed plaintiffs' damages at $17,321; from this award defendant appealed to the common pleas where after hearing the jury assessed the damages at $18,625. We now have this appeal by defendant, who assigns six errors. The third and fourth are to the answers of the court to defendant's second and third written points; both were affirmed; but as they were directed to the subject of damages as specially suffered by a bottle factory, the court properly said in explanation that the question was not as to the value of the property in the market solely as a bottling plant, but also whether its market value for any purpose had been depreciated by construction of the railroad. Nor did this in any way prejudice defendant's case, for the tendency of plaintiffs' evidence was to swell damages by reason of the special character of the plant, while the theory of defendant was that the general market value of the property had not suffered by the construction of an additional railroad. There is nothing of merit in these two assignments, and they are overruled.

The first assignment is much better supported. James T. Hamilton, one of plaintiffs, testified that the value of the property when defendant entered upon it was $75,000, and that by reason of the entry, it had depreciated $30,000; that they contemplated putting additional buildings upon the part cut off by the railroad, at an expense of $10,000, and by reason of such improvement with their then supply of gas for fuel, they estimated a saving of $1,300 per month in the cost of their

product.   Then this question was put: " Q.  In that $30,000,
you take into consideration the future profits you might make
by reason of the increase of the plant?   A.  Yes, sir."   Defend-
ant's counsel at once moved to strike out this testimony, based
on the expectations from the contemplated building and the
hoped for future profits from the estimated monthly saving, as
speculative and uncertain.   The court overruled the motion
because in its opinion it was impossible to separate the estimate
of the witness based on facts within his knowledge and the es-
timate based on wholly speculative profits.   We think the mo-
tion should have been granted at once, and this should have
been followed by most peremptory instruction to the jury to
disregard the estimate.   A careful perusal of this witness's
whole testimony discloses no substantial basis for the depreci-
ation of $30,000; the expected increased profits from a future
saving by enlargement of the plant was utterly unreliable, and
his answer to defendant's interrogatory impliedly admits that
his opinion is based on this expectation alone.   We have over
and over again ruled such testimony incompetent; one of the
later cases is Railway Company v. Patterson, 107 Pa. 464.
The very most that can be said in its favor is, that such profits
might possibly be made ; but that they would be made depends
on so many contingencies, that a verdict which purports to be
the truth cannot be based on them.   Experience and observa-
tion both teach us, that paper future profits are oftener illusory
than real.   Assume with this witness, that to-day his fuel would
cost no more for a large additional output, how can he under-
take to fix for years the cost of labor and materials for operat-
ing his plant?   How can he determine that in the future rival
manufacturers will not have advantages in some other location
superior to his, and undersell him in the market?   How can
he determine that his present supply of natural gas will con-
tinue, that it will not soon give out, and instead of being suf-
ficient to run additional furnaces will not be sufficient to run
his present ones?   The testimony on this subject was wildly
speculative and should have been excluded or promptly stricken
out.

The second assignment of error is also sustained.   The plain-
tiffs proposed to prove that the wareroom, a wooden structure,
was located within six feet of the railroad ; that in this were

stored large quantities of manufactured goods, hay and pine boxes for packing, and that the property in consequence was continually in imminent danger of destruction by fire from the operations of the road. The offer was objected to as irrelevant and speculative; the court, apparently with some hesitation, overruled the objection, saying, that while the quantities and kind of property plaintiffs actually kept in the wareroom from time to time was not relevant, yet the purpose of the ware-room, the packing and storage of goods, hay and pine boxes as a part of the necessary operations of the room, was relevant. After stating the purpose of the building this question was put: " Q. In the use of this wareroom what material do you necessarily have to have on hand, and in what quantities?" Then defendant's counsel repeated his objection, to which the court replied: " It simply goes to show how much danger there is; he is not asking any damages for these particular goods." So the objection was overruled, and the witness answered: " We use packing hay principally; we buy the packing hay in carloads and boxes." The plaintiffs, also, against the objection of defendant, gave evidence that the value of the goods in the warerooms was $40,000. Also that the cost of the building was $1,700. There was also testimony, that very many locomotives would pass this combustible building filled with inflammable material each day, and that by reason of the grade many sparks would be thrown off, and there was constantly great danger of fire to this $41,500 worth of property six feet from the passing locomotives.

As to risk from fire incident to the lawful operation of a road, there are two theories upon which the claimant for damages can properly argue such risk is material evidence in his favor. 1. He can claim the danger is so imminent, that no man of common prudence would maintain his building in such proximity to the railroad. In that case he is entitled to the cost of removal of his building and its reconstruction in a safe place. 2. If the danger be not great, either from the fireproof character of the structure, or its distance from the railroad, yet if it can still be said there is some risk from fire by reason of the lawful operation of the road, he can claim that that fact depreciates the market value of the land entered upon. In the first case it is the loss of the improvement; in the second, a disadvantage in the

use.   This is settled by numerous authorities, among them Railroad Co. v. Stauffer, 60 Pa. 374, Railway Co. v. McCloskey, 110 Pa. 436, and Setzler v. R. R. Co., 112 Pa. 36.   The claim of plaintiffs here, in view of their propositions of evidence, the purpose of it, and the effect of it, was to establish that a combustible building filled with high inflammable material was in daily danger of destruction from fire, because of the lawful use of locomotives.   No man of common prudence would maintain that building in that situation if plaintiffs' own testimony be believed.   His damage, then, arose not from a disadvantage in the use but a direct expense in removing the building and reconstructing it elsewhere.   As from the testimony its total cost for material and labor in its first construction was only $1,700, the cost of removal with the use of the old material would not probably exceed this.   However this may be, the matter was the subject of proof to as approximate a certainty as any other disputed question, for the cost could not be fanciful or speculative.   If the building was not in any imminent danger, then the risk was not one to be compensated as an independent item of damage, but a mere disadvantage which might depreciate the market value of plaintiffs' land and be considered by the jury in their comparison of the benefits and disadvantages.   In neither case was evidence of the large value of the contents of the building admissible.   If the wareroom was practically useless in that situation, as is the inevitable inference from plaintiffs' opinion of the great danger, then they were bound in common prudence to remove both before destruction.   If the danger was such as to amount to a disadvantage merely, then the value of the contents was immaterial because wholly speculative.   What quantity of material will be stored in a building when a possible future accidental fire occurs, cannot be foreseen; therefore its present value as a fact from which to determine its value on the happening of a problematical event in the future, is a mere conjecture or guess. No fire insurance company accepts risks on such a basis; their contracts for indemnity are always contingent upon proof of actual loss after a fire.   Even testimony of insurance experts as to increase of premium rates, in Patten v. Railway Co., 33 Pa. 426, was held inadmissible against the railroad company to show damage, because, as the Court said: " Insurance itself is

an approximate calculation of chances, and is a mere specula-
tion upon assumed uncertainties." But speculative as it is,
the insurance company has always one element of certainty,
proof of actual loss after an actual fire, which the railroad
company cannot have; the damages against the latter are as-
sessed once for all when the land is taken, on a most uncertain
basis, so uncertain that at common law consideration of such
a disadvantage was not permitted; it is only by our constitu-
tion and statute that a risk arising from the future lawful oper-
ation is authorized. And under our interpretation of the statute,
this risk cannot constitute an independent subject of damages
to be itemized by the jury, but it is only a disadvantage to be
considered along with other disadvantages in arriving at the
market value of the land immediately after the construction
of the road. Is there an increased risk from accidental fire?
Is it of such character as to depreciate the selling value of the
land? As we have noticed in the first proposition of plaintiff,
the destruction of the property is almost certain; in the sec-
ond, such a result is very remote; it is improbable that it ever
will occur, yet there was placed before the jury, as subject to
risk, the value of property to the amount of $41,500; this
was an invitation to them to allow sufficient damages for the
insurance of this amount, not only against a remote risk, but
of a wholly uncertain value at the date of a possible fire. The
value of the property was wholly irrelevant, and could only serve
to divert the mind of the jury from the true test, the market
value of the land immediately before and immediately after
the construction of the road. If counsel for defendant chooses
on cross-examination to draw from the witness the items which
enter into his calculation of depreciation from this particular
risk, that is his lookout. Here the plaintiffs not only proposed
to prove an irrelevant fact, the value of the contents of the ware-
room at the date of the entry upon the land, but against objec-
tion of defendant's counsel adduced testimony in support of the
proposition. This was manifest error, and could not fail to un-
justly prejudice defendant.

As to the fifth assignment, there was no error on part of the
court in its rulings on the admission of the evidence. The
question to Albert Hamilton, one of plaintiffs, then on the wit-
ness stand, was: "Is the construction and operation of this road

in any way beneficial to your property, or to you as owner?" This was properly objected to; the subject of inquiry was the benefit to the land, and the court rightly said the question must be restricted to that subject; the witness then answered, it was of no benefit to them or to the land. The court did all it could do to confine the answers to what was relevant, and failed only because of the apparent persistency of the witness in answering an improper question put by his counsel. The error of counsel and witness could only be cured by striking out the incompetent testimony, or by properly cautioning the jury against it. The question, as the court properly said, was not one of benefit to plaintiffs, but to the land; they already had access to two railroads, and said they wanted no more, therefore the new road was of no benefit to them; it was immaterial what they wanted; what would purchasers in the market want was the test to determine whether the land had been benefited. As a general rule the manufacturer thinks his property specially benefited by the construction of competing roads, and in offering to sell he uses the fact of accessibility to several as a special inducement to purchasers to buy. So it is wholly unimportant whether these plaintiffs wanted another railroad; the single question was whether this one specially benefited a manufacturing property to which was carried by rail raw material, and from which was carried to market the finished product. These plaintiffs may have owned securities in the other roads; may have had friendly relations with their officers and managers, and for other reasons may not have desired increased facilities for shipment on a new road. If the new road added to the market value of this property, specially, as distinguished from the benefit to all property by such an improvement, the defendant had a right to a proper consideration of the fact, without regard to plaintiffs' wishes in the matter, and the jury should have been so instructed in the plainest terms.

There is nothing in the charge of the learned judge of the court below which conflicts with the oft repeated rules of law applicable to such cases. In the abstract it is rigidly correct, and if it had been addressed to a jury of lawyers would probably have controlled them in their conclusions upon the evidence. But what defendant had a right to expect, nay, to demand, was not alone a perfunctory statement of the law,

which the jury seems not to have understood, or if understood to have disregarded, but also a calling of their attention to the particular points in dispute on the evidence, and then pointing out to them their plain duty as to a finding of fact from the weight of it; then their duty to apply the law to the fact so found. The inadmissible evidence as to future profits and the inconsistent theories of plaintiffs by which was lugged in the large value of the contents of the wareroom, which was inadmissible on either theory, probably had much to do with what seems to us a verdict decidedly against the weight of the evidence.

The judgment is reversed and a venire facias de novo awarded.