was struck off at the sale, that there was a constructive delivery to the sheriff, and the property was left with him to be delivered upon a subsequent occasion, it follows that the sheriff was a bailee, that he represented the appellant in the former action, and held the amount paid in satisfaction of the judgment recovered therein in trust for him. Under such circumstances there can be no doubt that the judgment bars this action as effectively as though the former action had been brought directly against the plaintiff herein. As was said by the court in Baird v. Daly, 57 N. Y. 245, 15 Am. Rep. 488:

"A recovery, either by the bailor or the bailee, is a bar to an action by the other party." Green v. Clarke, 12 N. Y. 343.

The appeal from the order denying the motion for a retaxation of costs presents the question whether the defendants, who separately appeared and answered, were properly permitted to tax separate bills of costs. The rule, in an action at law, is that defendants appearing and answering by separate attorneys are entitled to separate bills of costs, and that this right can only be defeated by showing that the parties are united in interest or collusively appeared by separate attorneys in bad faith for the purpose of enhancing the costs. Williams v. Cassady, 22 Hun, 182. No fact is stated in the affidavits submitted which justify the conclusion that the separate appearances were collusive or for the purpose of enabling the defendants to tax more than one bill of costs. They were not partners, and were under no obligations, either in law or fair dealing, to unite in their defense, and therefore are entitled to separate bills.

Whether this action should be regarded as difficult and extraordinary, within the meaning of section 3252 of the Code, was a question addressed to the discretion of the trial court; and, as was said in Byron v. Durrie, 6 Abb. N. C. 140:

"The determination of the question usually involves so many considerations which are addressed to the discretion of the judges that the appellate court rarely interferes."

We think there was no abuse of discretion in the present case, and that the order denying retaxation, as well as the judgment herein, should be affirmed, with costs. All concur.

---

(118 App. Div. 272)

In re BLACKWELL'S ISLAND BRIDGE IN CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. March 22, 1907.)

1. EMINENT DOMAIN—VALUE OF PROPERTY—EVIDENCE—RENTS.

In a proceeding to condemn land for a public use, the amount of actual rents received is admissible to show the fee value of the property.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Eminent Domain, §§ 353, 541.]

2. SAME—USE OF PROPERTY—BUILDINGS—CONSTRUCTION AND RENTAL VALUE.

In a proceeding to condemn certain vacant lots, evidence that the best use to which they could be put was the erection of three apartment houses, the cost of which would be $75,000, and that the rental value would be between $14,000 and $15,000 a year, was inadmissible, as containing uncertain and speculative elements.

3. SAME—STRUCTURAL VALUE.

In a proceeding to condemn land, evidence of the structural value of buildings on the property apart from the market value of the lot with the buildings standing thereon was inadmissible.

4. EVIDENCE—EXPERT WITNESSES—REDIRECT EXAMINATION—SCOPE.

In a proceeding to condemn land, it was error for the commissioners to allow expert witnesses on redirect examination to testify in regard to sales of pieces of property about which they had not been interrogated on cross-examination.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2379.]

5. EMINENT DOMAIN—AWARD OF DAMAGES—REVIEW.

An award of damages for land taken for a public use, by commissioners of estimate and appraisal of the city of New York, will be set aside on appeal, where there were numerous errors in the admission and exclusion of evidence on the issue of the value of the property, resulting in very considerable discrepancies between the allowance and the value of the property.

Appeal from Special Term.

Proceeding by the city of New York for the acquisition of certain premises situated on the westerly side of Avenue A or Sutton Place as a site for the Blackwell's Island Bridge. From an order of the Special Term, confirming the report of commissioners of estimate and appraisal, the city appeals. Reversed.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and HOUGHTON, JJ.

William B. Ellison, Corp. Counsel (Theodore Connoly, Charles N. Harris, and Thomas F. Noonan, on the brief), for appellant.

Albert I. Sire, for respondents Shapiro and Carstens.

Walter B. Hopping, for respondents Wendell and others.

Truman H. Baldwin, for respondent Hyslop.

CLARKE, J. This is an appeal by the city from an order of the Special Term confirming the report of the commissioners of estimate and appraisal of land taken by the city on Fifty-Ninth and Sixtieth streets, between Avenue A and First avenue, as a site for the approach for the Blackwell's Island Bridge. Notice of the intention to apply for the appointment of commissioners of estimate and appraisal was dated on February 10, 1905, and the order of appointment was made and entered on the 22d day of April, 1905. The title to the property taken vested in the city on the 9th day of September, 1905. On the 23d day of February, 1905, the city purchased No. 48 Avenue A, being parcel 25 on the commissioners' map, being a lot 27.16 feet frontage by 80 feet in depth, on which was a four-story brick apartment house, for $21,500. For No. 46 Avenue A, parcel No. 24, 27.15 feet frontage, 80 feet deep, upon which there was a building in all respects identical with No. 48, the two possessing a party wall in common, the commissioners allowed $30,209.20. For No. 50 Avenue A, parcel 26, immediately to the north of parcel 25, a lot 27.66 feet by 106 feet 5 inches deep, upon which was a building identical with that on the lots Nos. 46 and 48, the commissioners allowed $33,354.46. No. 52 Avenue A, parcel 27, 25.10 feet frontage, 106 feet 5 inches deep, upon which was a five-story brick building 51 feet deep and a three-story frame

building in the rear 25 feet by 24 feet, the city purchased on February 1, 1905, for $23,500. For No. 54 Avenue A, 29 feet frontage, 80 feet deep, with a five-story brick building thereon, the commissioners allowed $32,422.37. No. 44 Avenue A, 20.5 frontage, 80 feet deep, with four-story brick building, the city bought on February 14, 1905, for $16,000. For the lot immediately south of that, No. 42 Avenue A, parcel 22, 23.02 feet frontage, 80 feet in depth, with four-story brick building, the commissioners allowed $40,000. Immediately adjacent to said property, but facing on Fifty-Ninth street, No. 439, parcel No. 21, with 26 feet frontage, 97.04 feet in depth, with a four-story brick building, with an extension, the city purchased on the 24th day of March, 1905, for $22,500. No. 437 East Fifty-Ninth street, immediately adjacent thereto to the west, No. 20 on the map, 19.5 by 100.42 feet in depth, five-story brick, the commissioners allowed $23,866.55. For the next three lots, 431, 433, and 435 East Fifty-Ninth street, all held in one ownership and each containing a five-story brick building, the commissioners allowed $99,206.15. Parcel No. 31 consists of a vacant lot facing on Sixtieth street, 100 feet by 100.40 feet. This property was bought by the owner on March 11, 1905, for $46,000. The commissioners allowed $65,000; that is, an increase in value of this unimproved lot on East Sixtieth street of $19,000 in six months.

The comparison of the amounts awarded by the commissioners with the amounts paid in these five actual transactions out of a total of 13 parcels demonstrates that in allowing these excessive increases in the estimated value over the actual transactions the commissioners must have proceeded upon some erroneous theory. An examination of the record discloses certain fundamental errors, the commission of which must have brought about the extraordinary result arrived at. Testimony of the owners in regard to the actual rent received, for several years prior to the vesting of title in the city, of 46, 50, and 56 Avenue A was excluded by the commissioners over the objection and exception of the city. The actual rent received is evidence of the rental value. The rental value of improved real property is relevant on the question of fee value. Jamieson v. Kings County Railway Co., 147 N. Y. 322, 41 N. E. 693. Actual rents given and received within the time proper to be considered were competent. Gallagher v. Kingston Water Co., 25 App. Div. 82, 49 N. Y. Supp. 250; Cook v. N. Y. El. R. R. Co., 144 N. Y. 117, 39 N. E. 2. In Ettlinger v. Weil, 184 N. Y. 179, 77 N. E. 31, the court said:

"Rental value tends to prove fee value, because, other things being equal, the income from property is a measure of its market value. Rental value is capable of exact determination."

In regard to the vacant lots, parcel No. 31, a witness was asked what would be the best use to which these lots could be put. He replied: "The erection of three apartment houses, 33 front each." He was then allowed to testify, over objections and exceptions, that the cost of constructing three such buildings would be $75,000, and that the rental value of such buildings would be between $14,000 and $15,000 a year. This was clear error. It involved so much of the elements of uncertainty and speculation as to be inadmissible as proof of any fact.

As said in the case of Tallman v. Met. El. R. R. Co., 121 N. Y. 119, 23 N. E. 1134, 8 L. R. A. 173:

> "There can be no certainty that the plaintiff would ever have erected dwelling houses upon the lot, and there would be no certainty as to the rents which could have been obtained from them, either with or without the railroad in the street."

See Woolsey v. N. Y. E. R. R. Co., 134 N. Y., at page 327, 30 N. E. 387, 31 N. E. 891.

The same kind of evidence was erroneously admitted in regard to parcel No. 22, where the witness was allowed to testify that he would build up the vacant space west of the building, which is now the yard, with a four-story building, to conform with the structure there now, with a store on the first floor, and change the front of the building; that the cost of such addition would be from $2,500 to $2,700; and that with such improvements the rental value of the building would be $3,500 to $4,000 a year.

In regard to a number of the parcels the commissioners erroneously allowed testimony as to the structural value of the buildings. I understand the rule is that a witness may testify as to the market value of a lot of land and the market value of the lot with the building thereon standing; in other words, testimony as to how much the market value of the lot is enhanced by the building standing thereon. What the structural value of the building is, is not competent. A man may purchase a piece of wild land, far off from any railroad connection, and thereon may build a magnificent structure. No development may take place in the neighborhood, and there may be no demand of any kind for the property. In considering the market value of the real estate under such circumstances, it would be obvious that what it had cost to put the building there could in no way affect the market value of the property as a whole. In Village of St. Johnsville v. Smith, 184 N. Y. 341, 77 N. E. 617, the court said:

> "In holding, as we do, that the appellant was entitled to have the improvements made upon his land by the respondent while a trespasser taken into consideration in ascertaining his compensation, it must be distinctly understood that the measure of such compensation is neither the cost of the improvements, nor their value, nor the value of their use to the village. The true inquiry is, how much do the improvements placed upon the property enhance the value of the appellant's land?"

The commissioners also erred in allowing expert witnesses upon redirect examination to testify in regard to sale of pieces of property about which they had not been interrogated on cross-examination. Robinson v. N. Y. El. R. R. Co., 175 N. Y. 219, 67 N. E. 431.

Realizing, as we do, that the commissioners of estimate and appraisal constitute a somewhat unique tribunal, with the power to take evidence, and with the right and duty to themselves view the premises, and from such view form an independent judgment, we should hesitate to interfere with its award for any one, or perhaps all, of the errors pointed out. It is also the rule that the amount of the commissioners' award for damages is rarely interfered with by the court. But when we find, as we do in the matter now at bar, such considerable discrepancies between fact and estimate, and find so many errors in the admission

and the exclusion of evidence, we are satisfied that the awards must have been affected by the matter erroneously admitted, and reach the conclusion that the award ought not to stand.

The order appealed from is therefore reversed, and the proceeding sent back to new commissioners to be appointed. All concur.