**UNITED STATES v. CERTAIN LANDS LOCATED IN THE TOWNS OF WOODBURY AND HIGHLANDS, ORANGE COUNTY, N. Y., et al.**

District Court, S. D. New York.

Oct. 19, 1943.

For original opinion see 51 F.Supp. 66.

Harry T. Dolan, Sp. Asst. to the Atty. Gen., for petitioner-plaintiff.

White & Case, of New York City (Adrian D. Stevenson, Orison S. Marden, and Charles J. Fay, all of New York City, of counsel), for defendant Forest of Dean Iron Ore Co.

BRIGHT, District Judge.

The defendant, Forest of Dean Iron Ore Co., Inc., asks for a rehearing of the issues on the grounds (1) that the finding that the iron ore deposits contained in the pillars in the shaft on its property did not enhance the value of the property taken is against the weight of evidence, and (2) that this court erroneously concluded that it was without jurisdiction to award just compensation for the crushed stone taken and used by the plaintiff.

These two propositions were reargued at some length, and I have re-read the briefs originally submitted by both sides and have examined the cases cited by each upon the subjects mentioned. I have also again re-read my notes of the testimony of the witnesses introduced by both sides upon the subject, and I can see no reason

to change the conclusions formerly arrived at.

■ The testimony, in my opinion, would not justify any change. There was no testimony which showed that the presence of the pillars in the mine shaft in any way enhanced the value of the property. The defendant did introduce proof as to the value of the land and separate proof as to the estimated amount of ore in the pillars, what it would cost to remove it, the length of time such operation would take, the price at which the removed ore could be sold, and the estimated profit from its sale. But this method of proving value has been condemned in Sparkill Realty Corp. v. State, 268 N.Y. 192, 197 N.E. 192, 193, in which an award was reversed. There the claimants submitted no proof of the market value of the land as such. Instead, they offered, as was here done, proof as to amount of quarriable rock upon the property, its probable yield in broken stone, the cost of completing the plant for breaking the rock and preparing it for market, the amount of crushed stone that could be produced annually, the cost of its removal, the freight cost of transportation, and the average price per yard at which such crushed stone could be sold in the market. Assuming those various elements, experts testified as to the market value of the property. Judge Loughran writing, said: "This procedure in itself proved nothing. * * * There was, of course, no proof of a production and transportation cost invariable at $1.10 per cubic yard for decades to come, nor of a market stabilized at $1.90 over an equal period in the future. These hypothesized profit factors had no reality, and any conclusion thereby contrived was inadmissible. * * * This is not to say that one valid expert opinion may not be based on another, * * * but that opinion testimony may not be predicated on a sequence of conjectures." The subsequent disposition of that case in 254 App.Div. 78, 4 N.Y.S.2d 679, affirmed without opinion 279 N.Y. 656, 18 N.E.2d 301, did not change that rule.

Here the testimony that the pillars could be removed at a profit and the time within which it could be done was sharply disputed. It did appear that up to 1942 the Forest of Dean Company had no idea of such an operation. But for the war, there probably would have been no demand for these abandoned pillars. The contingencies and conjectures inherent in the figures testified to are further emphasized by the fact that no one can predict how long the war will last, and, therefore, how long the demand will exist. There is no surety that the operation will take two years or five years; there is only an estimate and that is disputed; and the same statement applies to the price at which the ore may be marketed, the cost of marketing, the ability to get machinery and supplies for that purpose in view of the war priorities, and the fact that all of such things are essential to the war effort, whether labor costs will remain static, whether there will be an adequate supply of labor, whether or for how long the market will continue, and whether other costs will be as they are. It eliminates entirely the business ability of anyone who might undertake the task involved.

In addition to these uncertainties, the real estate expert Wilkin, called by the defendant, testified that he had considered the presence of the mine upon the property, but under the circumstances, he did not think it had any value, and Roehrs, another expert called by the defendant, testified that he did not consider the minerals of any value insofar as land values were concerned, and did not know whether the value of the land was enhanced by the minerals in it. It is true that these two witnesses did not attempt to qualify as experts on the value of mine property, but they did seek to qualify as experts on the value of the lands condemned in the market and what they considered their highest available use. There was proof by the plaintiff's mine expert Wagner, that in his opinion, the property had no commercial value as a mining property, and that the ore in the pillars did not enhance the value of the property.

The method of proving value adopted by the defendant has also been condemned in United States v. Meyer, 7 Cir., 113 F.2d 387, 397; Morton Butler Timber Co. v. United States, 6 Cir., 91 F.2d 884–888; United States v. Indian Creek Marble Co., D.C., 40 F.Supp. 811–822; United States v. Certain Lands in Town of Highlands, D.C., 45 F.Supp. 126, 127; United States v. 5 Acres of Land, D.C., 50 F.Supp. 69–71; New York Cent. R. Co. v. Maloney, 234 N. Y. 208–218, 137 N.E. 305; Orleans County Quarry Co. v. State, 172 App.Div. 863–865, 159 N.Y.S. 30; Matter of Simmons, 58 Misc. 581–590, 109 N.Y.S. 1036; Ross v.

Commissioners of Palisades Interstate Park, 90 N.J.L. 461, 101 A. 60–63.

The very recent case of United States ex rel, and for Use of Tennessee Valley Authority v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 1055, 87 L.Ed. 1390, decided May 17, 1943, while not in point, is interesting. There the owner placed a value upon his property by assuming that with the privilege of eminent domain which his company possessed, it could acquire other properties and thus develop a hydro-electric project. The estimated cost of such acquisition, the annual output of such a project, the production cost of electricity and its selling price, was also estimated in the evidence. The Supreme Court refused to permit any value to be recovered because of the existence of the right of condemnation. It stated that the owner's "project was only a speculative venture—a promotional scheme wholly in futuro. * * * We hold only that profits, attributable to the enterprise which respondent hoped to launch, are inadmissible as evidence of the value of the lands which were taken. * * * We do not reach the question much discussed at the bar and in the briefs whether evidence of the earnings of respondent's hypothetical four-dam project should have been excluded for the further reason that it was too speculative." Citing in the footnote Sharp v. United States, 191 U.S. 341, 348–350, 24 S.Ct. 114, 48 L.Ed. 211; San Diego L. & T. Co. v. Neale, 88 Cal. 50, 58–63, 25 P. 977, 11 L.R.A. 604; Matter of City of New York, 118 App.Div. 272–275, 103 N.Y.S. 441; New York Central R. Co. v. Maloney, 334 N.Y. 208–218, 137 N.E. 305; Sparkill Realty Corp. v. State, 268 N.Y. 192, 197 N.E. 192; Burt v. Wigglesworth, 117 Mass. 302–306; Hamilton v. Pittsburg, etc., R. Co., 190 Pa. 51–57, 42 A. 369, 51 L.R.A. 319; United Gas Co. v. Railroad Commission, 278 U.S. 300, 317–318, 49 S.Ct. 150, 73 L.Ed. 390.

■ These cases, as well as those previously cited, justify me, I think, in adhering to my previous decision, (1) for the reason that the defendant, which has the burden of proof, has failed to sustain it insofar as its contention that the existence of the pillars enhance the value of the land is concerned, (2) that such proof as has been given is too speculative and conjectural upon which to base any award, and (3) I do not think that the presence of the pillars in the mine slope in any way

enhances the value of the real property condemned.

The cases of Lehigh Valley Coal Co. v. Wilkesbarre & E. R. Co., 187 Pa. 145, 41 A. 37, and United States v. New River Collieries Co., 262 U.S. 341, 43 S.Ct. 565, 67 L.Ed. 1014, are not to the contrary.

The second proposition advanced upon this motion was also argued at length in the briefs at the time of the original submission. The crushed stone on the land was not real property, and therefore not subject to condemnation and not condemned in this proceeding. Matter of Simmons, 58 Misc. 581–591, 109 N.Y.S. 1036; Lehigh Valley Coal Co. v. Wilkesbarre & E. R. Co., 187 Pa. 145, 41 A. 37.

■ A judgment has been presented by plaintiff upon notice to all parties interested and has been held pending the determination of this motion for reargument. Counsel for the School District request that interest be allowed from November 13, 1942, upon the $4,700 deposited in the registry of this court on March 27, 1942. The basis of that request is that the government opposed the payment out of that deposit when the School District made its motion for that relief returnable on November 13, 1942. I find in looking at the papers submitted that the government opposed payment out of the money not only because it contended that the deposit exceeded the value of the land sought to be taken, but also because the title to the land upon which the schoolhouse stood came to the District under a deed which reserved the fee in the event that the property should cease to be used for school purposes, and in any event, also reserved all mineral rights to the Forest of Dean Company, and that as the Forest of Dean Company was still claiming for those minerals, it could not be determined what portion of the money deposited should be awarded to the School District, and what, if any, to the Forest of Dean Company. The motion was accordingly denied. Under the circumstances, therefore, I do not think that interest can be awarded under the decision in United States v. 3.71 Acres of Land, D.C., 50 F.Supp. 628. Interest, however, will be awarded upon the excess of the award made over the amount deposited from March 27, 1942, when the government took possession.