(66 Misc. Rep. 488.)

In re BLOCK BOUNDED BY AVENUE A AND FIRST AVENUE, FIFTY-NINTH AND SIXTIETH STREETS, AND BLOCK BOUNDED BY FIRST AND SECOND AVENUES, BOROUGH OF MANHATTAN, CITY OF NEW YORK.

(Supreme Court, Special Term, New York County. March 26, 1910.)

1. EMINENT DOMAIN (§ 232*)—PROCEEDINGS—ASSESSMENT BY COMMISSIONERS —VIEW—STATUTORY PROVISIONS.

Under Greater New York Charter (Laws 1897, c. 378) § 1437, requiring the commissioners of estimate and appraisal to view the lands required for public uses, and section 1438 as amended by Laws 1901, c. 466, requiring the commissioners in proceedings to acquire land to report their proceedings, with minutes of the testimony taken by them, etc., the awards made by the commissioners must be based on the record evidence reported to the court, so that their findings may be properly reviewed, and the view required is only for the purpose of enabling them to better understand the evidence.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 590, 591; Dec. Dig. § 232.*]

---

**2.** EMINENT DOMAIN (§ 238*)—PROCEEDINGS—ASSESSMENT BY COMMISSIONERS —REVIEW.

Awards made by commissioners under Greater New York Charter (Laws 1897, c. 378) §§ 1435–1448, in proceedings to acquire land, are reviewable by the courts.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 614; Dec. Dig. § 238.*]

**3.** EMINENT DOMAIN (§ 237*)—PROCEEDINGS—ASSESSMENT BY COMMISSIONERS— REVIEW—EXCESSIVE OR INADEQUATE AWARDS.

An award of commissioners in proceedings by the city of New York to acquire land will be set aside, where it is in excess of what the owner claimed, or less than testified to by the city's witnesses.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604– 613; Dec. Dig. § 237.*]

**4.** EMINENT DOMAIN (§ 131*)—COMPENSATION—"MARKET VALUE."

In estimating the value of property taken for a public use, the "market value," which is the price which it will bring when offered for sale by one who desires, but is not obliged, to sell it, and is purchased by one who is under no necessity of having it, must be considered, and the fair market value at the date of the vesting of the title in the municipality taking the land is the measure of compensation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 353; Dec. Dig. § 131.*

For other definitions, see Words and Phrases, vol. 5, pp. 4383–4388; vol. 8, p. 7717.]

**5.** EMINENT DOMAIN (§ 150*)—COMPENSATION—EXCESSIVE AMOUNT.

The price paid on a bona fide sale of the property about the time of the vesting of the title thereto in a city seeking to acquire it for a public use furnishes some evidence of value, and where parcels taken by a city were purchased shortly before the taking, and there was no evidence that they were sacrificed, or that the sale was in any way forced, or that the general course of values in the neighborhood of the parcels between the time of the purchase and the time of the taking of the title by the city justified an increase over the purchase price paid by the owners, an award greatly in excess of the purchase price was excessive.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 402; Dec. Dig. § 150.*]

**6.** EMINENT DOMAIN (§ 202*)—COMPENSATION—AMOUNT—EVIDENCE.

Where two parcels of land were not alike, either as to location and dimensions or the character of the buildings thereon, the price paid by the city for one of the parcels should not be taken as a criterion of the value of the other.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 541; Dec. Dig. § 202.*]

**7.** EMINENT DOMAIN (§ 205*)—COMPENSATION—AMOUNT—EVIDENCE.

That an award for a parcel of land taken by a city for a public use is in excess of the estimate of value made by its experts does not require it to be rejected, where it was less than the estimate of the owner's witness.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 544; Dec. Dig. § 205.*]

**8.** EMINENT DOMAIN (§ 205*)—COMPENSATION—AMOUNT—EVIDENCE.

That an award for a parcel in proceedings by the city of New York to acquire land for a public use was not increased by the commissioners

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after increasing the award of another parcel furnishes no ground for setting aside the award, so long as it is warranted by the facts, and where no one applied for an increase of the award.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 544; Dec. Dig. § 205.*]

9. EMINENT DOMAIN (§ 237*)—PROCEEDINGS—ASSESSMENT BY COMMISSIONERS—REVIEW.

To warrant a reversal of an award of commissioners in proceedings to acquire land for a public use, on the ground that the commissioners received improper evidence, it must appear, not only that improper testimony was received, but that it affected the result.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604–613; Dec. Dig. § 237.*]

10. EMINENT DOMAIN (§ 237*)—PROCEEDINGS—ASSESSMENT BY COMMISSIONERS—REVIEW.

An award by commissioners in proceedings to acquire land will not be set aside, unless it affirmatively appears that they acted on an erroneous principle, and it is not enough that they may have so acted.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604–613; Dec. Dig. § 237.*]

11. EMINENT DOMAIN (§ 237*)—PROCEEDINGS—ASSESSMENT BY COMMISSIONERS—QUALIFICATIONS—OBJECTIONS.

The objection to the qualification of a commissioner of estimate and appraisal in proceedings by the city of New York to acquire land, made for the first time when the report of the commissioners is presented for confirmation, comes too late.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 610; Dec. Dig. § 237.*]

12. FIXTURES (§ 15*)—LANDLORD AND TENANT—TRADE FIXTURES—REMOVAL.

Machinery and appliances placed in the leased building by the tenant with the permission of the landlord, and necessary for the business of the tenant, are as between the tenant and landlord trade fixtures, and are personal property, and may be removed by the tenant.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. §§ 23–29; Dec. Dig. § 15.*]

13. EMINENT DOMAIN (§ 155*)—PROCEEDINGS—COMPENSATION—PERSONS ENTITLED—LANDLORD OR TENANT—FIXTURES.

Where, in condemnation proceedings, the city of New York took entire buildings as they stood before the expiration of a tenancy, and there were trade fixtures placed in the buildings by the tenant with the permission of the landlord, the trade fixtures, as between the tenant and the city, must be treated as real property, and the city must pay the tenant therefor, and he need not remove them, though under Greater New York Charter (Laws 1897, c. 378) § 1439, as amended by Laws 1905, c. 512, all leases cease on the vesting of title in the city of land sought to be taken, etc.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 421–424; Dec. Dig. § 155.*]

14. EMINENT DOMAIN (§ 133*)—COMPENSATION—AMOUNT—BUILDINGS.

Ordinarily, when land is taken for a public use, the buildings thereon are taken with it, and the buildings must be valued as a part of the realty, and not merely for the materials they contain, or for what they are worth for removal.

[Ed. Note.—For other cases, see Eminent Domain, Dec. Dig. § 133.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

15. **EMINENT DOMAIN (§ 155\*)—COMPENSATION—PERSONS ENTITLED—LANDLORD OR TENANT—FIXTURES.**

Where, in proceedings by the city of New York to acquire land, the commissioners in their preliminary report found the damages to an owner, who had made no claim for trade fixtures in the buildings on his land, nor proved the value thereof, nor added the same to the fee value of the lands with the buildings, the commissioners, in determining the value of the fixtures, which belonged to a tenant, could not deduct the value thereof from the damages awarded to the owner.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 421–424; Dec. Dig. § 155.\*]

16. **EMINENT DOMAIN (§ 265\*)—PROCEEDINGS—COSTS.**

In the absence of a statute providing for costs or allowances in proceedings by a city to acquire land for a public use, none can be allowed.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 690; Dec. Dig. § 265.\*]

Proceedings by the City of New York to acquire land for bridge purposes. On objections to report of commissioners of estimate and appraisal. Overruled in part, and reversed in part, and referred to the same commissioners or to new commissioners.

See, also, 120 N. Y. Supp. 1134.

Francis K. Pendleton, Corp Counsel (Joel J. Squier, of counsel), for City of New York.

Augustine & Hopping (Walter B. Hopping, of counsel), for owners of damage parcels Nos. 1, 2, 3, 5, 12, 22, 23, 27, 31, 33, 34, 35, 36, 37, 38, 39, 39a, 40, and 41.

George W. Ellis, for owner of damage parcel No. 7.

Truman H. & George H. Baldwin, for owner of damage parcel No. 10.

Michael J. Mulqueen, for owners of damage parcels Nos. 17, 19, 21, 25, 26, and 29.

Joseph A. Flannery, for owners of damage parcels Nos. 18, 24, and 49.

Straley & Hasbrouck, for owner of damage parcel No. 28.

E. Walter Beebe, for owner of damage parcels Nos. 32 and 48.

Adolph Bloch, for owner tenant's administratrix of part of damage parcel No. 32.

Parker & Aaron (H. Aaron, of counsel), for owner of damage parcel No. 42.

Henry H. Sherman, for owner of damage parcel No. 43.

John F. Carew, in pro per.

GIEGERICH, J. · These proceedings were instituted under chapter 21 of the Greater New York charter (Laws 1897, c. 378), and commissioners of estimate and appraisal were appointed to ascertain and appraise the compensation to be made to the owners and all persons interested in the property sought to be acquired in this proceeding. Their report has been filed and its confirmation as to certain damage parcels is opposed by the city and also by the owners of damage parcels Nos. 32 and 48 as to such latter parcels.

Among the grounds urged by the city are that the awards for cer-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tain parcels are grossly excessive, and that the awards as to' two par-
cels are greater than the experts who were called as witnesses by the
owners testified to be the market value of each parcel.  It is maintained
in behalf of the claimants that the commissioners in making their
awards were not confined to the evidence which appears in the rec-
ord, but that they were at liberty to use any information which they
were able to obtain, no matter from what source they may have as-
certained the same, and that hence, by reason of the information thus
acquired, it is impossible to review their findings as to the amount of
the compensation to the property owners.  Numerous decisions are
cited in support of this contention, the earliest being the Matter of
William and Anthony Sts., 19 Wend. 678, and the latest the Matter
of Simmons (Askokan Reservoir), 132 App. Div. 574, 116 N. Y.
Supp. 952.  The case last cited distinguishes Burchard v. State of
N. Y., 128 App. Div. 750, 113 N. Y. Supp. 233, where a judgment of
the Court of Claims was reversed, because that court had disregarded
evidence introduced both by the claimants and the state as to the value
of land taken for canal purposes, and had awarded a judgment for
less than the estimated value as given by any witnesses, including the
witnesses for the state; the court, in the course of its opinion, at
page 575 of 132 App. Div., and page 953 of 116 N. Y. Supp., saying:

"That case, however [referring to Burchard v. State of N. Y., supra], is not
here applicable.  The functions and duties of commissioners of appraisal in
condemnation proceedings are vastly different from those of the Court of
Claims.  It is well settled that the former may seek information from various
sources, and supply themselves with knowledge pertaining to the subject mat-
ter of their inquiry, independently of the parties, and that they are unham-
pered by technical rules of evidence, and unrestricted as to their sources of
information.  *  *  *  The information thus acquired by the commissioners,
independently of the evidence produced by the parties, may properly be util-
ized by said commissioners.  In the very nature of things it does not get into
the record, and cannot be considered by an appellate court."

As will hereafter be shown, the proceedings in the matter just
quoted from and in the case at bar were instituted under different
enactments.  So far as I have been able to discover after diligent re-
search, views similar to the above-quoted remarks of the court in
Matter of Simmons (Askokan Reservoir) supra, were first expressed
in the Matter of William and Anthony Sts., supra, which were in-
stituted under section 178 of chapter 86 of the Revised Laws of 1813
(2 Rev. Laws, pp. 409–416), which provided for the appointment of
three commissioners of estimate and assessment to appraise the loss
and damage to the respective owners, lessees, parties, and persons re-
spectively entitled unto or interested in lands and premises required
for the opening of any street, avenue, square, or public place, and
prescribed their duties and regulated the procedure for acquiring the
same.  The said section 178, among other things, provided:

"That it shall be the duty of said commissioners, after having viewed the
lands, tenements, hereditaments and premises so required, *  *  *  and
after causing all such surveys, maps, profiles, plans and other things as they
may judge necessary to be needed, done and prepared for their use, to pro-
ceed to and make a just and equitable estimate and assessment of the loss
and damage, if any, over and above the benefit and advantage, or of the
benefit and advantage, if any, over and above the loss and damage, as the case

may be, to the respective owners, * * * and a just and equitable esti-
mate and assessment also of the order of the benefit and advantage of
* * * to the respective owners, * * * and to report to said Supreme
Court of Judicature without unnecessary delay; * * * and upon the com-
ing in of the said report signed by the said commissioners, or any two of
them, the said court shall by rule or order, after hearing any matter which
may be alleged against the same, either confirm the said report or refer the
same to the said commissioners for revisal and correction, or to new commis-
sioners to be appointed by the said court to reconsider the subject matter
thereof, and the said commissioners to whom the said report shall be so re-
ferred shall return the same report corrected and revised, or a new report to
be made by them in the premises, to the said court without unnecessary de-
lay; and the same on being so returned shall be confirmed or again referred
by the said court in manner aforesaid, as right and justice shall require, and
so from time to time until a report shall be made or returned in the premises
which the said court shall confirm; and such report, when so confirmed by
the court, shall be final and conclusive as well upon the said mayor, alder-
men and commonalty of the city of New York as upon the owners, lessees,
persons and parties interested in and entitled unto the lands, tenements, here-
ditaments and premises mentioned in the said report, and also upon all other
persons whomsoever."

By the act of 1818 commissioners of estimate and assessment were
authorized to administer oaths (Laws 1818, p. 196, c. 210, § 2). In
the Matter of William and Anthony Sts., supra, most of the several
objectors produced affidavits in which the deponents expressed opin-
ions differing more or less widely from the results at which the com-
missioners arrived, and the court was asked to send back the reports
on the ground that they were against the weight of evidence, and
the court, through Bronson, J., adverting to the provisions above
quoted, at page 694 of 19 Wend., said:

"Courts seldom set aside the verdict of a jury on the sole ground that they
may think it against the weight of evidence. And yet there is much less dif-
ficulty in such a review than there is in the case under consideration. Jurors
do not act upon particular facts within their knowledge, but upon written
documents and the testimony of witnesses submitted to their consideration.
The evidence upon which they form conclusions may be put upon paper and
submitted to the court for consideration. But it is not so, or, at most, only
to a very limited extent, in relation to the proceedings of these commission-
ers. They are selected, not only with reference to their integrity and general
capacity for business, but on account of the knowledge which they are sup-
posed to possess concerning the particular duty which they are appointed to
discharge. Such information as they have in relation to the value of the
property in the same neighborhood—in whatever way the information may
have been obtained—they are at liberty to use. The very first thing which is
required of them by law, after taking the oath of office, is to view the prem-
ises affected by the improvement (section 178). They are thus to acquire in-
formation, and that, too, of the most important character, which there are no
means of bringing to this court. And, beyond this, I entertain no doubt that
the commissioners may take the opinions of others, in whose integrity and
judgment they have confidence, without swearing them as witnesses. They
may converse with all classes of men concerning the business in hand, and
collect information in all the ways which a prudent man usually takes to sat-
isfy his own mind concerning matters of the like kind where his own interests
are involved in the inquiry. The commissioners must exercise their own
judgment at the last, but they may first seek light from other minds, the
better to enable themselves to arrive at just conclusions. When the original
jurisdiction is exercised in this manner, it is impossible that there should be
anything like a regular judicial review. We cannot regard the commissioners
as witnesses merely, and then suffer their judgment to be balanced by the
opinions expressed in three opposing affidavits, and to be outweighed when a

*fourth is added.* For aught that we can know, the judgment expressed by the commissioners upon questions of value may combine the opinions of a hundred men who are in all respects as well qualified to form just conclusions as those who make opposing affidavits. In settling questions of value the commissioners do not sit as a court and jury and decide the evidence of witnesses examined before them. Nothing of this kind was contemplated by the act of 1813, nor can it be justly inferred from the act of 1818, which authorized them to administer oaths (Laws 1818, p. 196, § 2). Estimates from mechanics and builders may become important in the discharge of the duties of the commissioners, and in these and other cases they may require the sanction of an oath to the estimates which they receive. If in any case they make the opinions of others the basis of action, without exercising their own judgment, those opinions should be given upon oath. But, when they only seek information for the purpose of enlightening their own judgment, they may obtain it in any of the ways in which men usually acquire knowledge. They need not, and in point of practice they do not, sit as a court. If in any case they take the testimony in relation to value, it is but one item in the account, which may go to qualify, but cannot control, their own opinions."

It will be seen, from a reading of the foregoing statutory provisions and the opinion interpreting the same, that there was no requirement that the commissioners take the testimony of witnesses, and even if they did they were not required to reduce it to writing, and that their duties were more analogous to those of appraisers of the value of property than those of a judicial or semijudicial tribunal, which fixes the value of land taken under the power of eminent domain. Section 1438 of the Greater New York charter, as amended by chapter 466 of the Laws of 1901, and forming part of chapter 21 of the charter, under which these proceedings were instituted, however, distinctly provides that the commissioners "shall make report of their proceedings to the Supreme Court, with the minutes of the testimony taken by them," thus showing that their awards must be based upon the record evidence, which must be reported to the court in order that the findings of the commissioners may be properly reviewed. Chapter 21 of the charter, under which these proceedings were instituted, provides for the acquirement by the city of New York or any department, including the department of education, boards, or officers of the said city government, of lands and interest therein for any public use or purpose of condemnation, while, as above shown, the provisions which regulated the matter just mentioned related to the opening of streets (2 Rev. Laws, c. 86, p. 409, § 178).

The latter enactment, with modifications, was embodied in subsequent enactments, including the consolidation act (Laws 1882, c. 410, §§ 964–970), and later on with substantial and important additions in title 4 of chapter 17 of the Greater New York charter, relating to the opening of streets and parks and the acquisition of land therefor. The latter contains provisoins not to be found in the earlier enactments. Thus section 978 provides that it shall be the duty of the commissioners of estimate and assessment to view the lands to be acquired and those adjacent thereto "if they shall deem such view necessary or useful." Section 979 requires the commissioners to reduce to writing any testimony taken by them, and section 980 prescribes that "after hearing testimony and considering such proofs offered the commissioners of estimate, or a majority of them, all hav-

ing considered the same or having had an opportunity to be present, shall, without unnecessary delay, ascertain and estimate the compensation which ought to be made" by the city of New York to the owners for the lands taken or an interest therein. It will be observed that these provisions have completely changed the character of the duties of commissioners of estimate and assessment in proceedings to open streets and parks, and that they, like commissioners of estimate and appraisal appointed in proceedings instituted under chapter 21 of the charter, are required to consider the written evidence. The latter provisions, except the above-quoted part of section 1438, which is new, are practically a re-enactment of chapter 630 of the Laws of 1897, entitled "An act to provide for the acquisition of lands and interests therein for public purposes in the city of New York," and which superseded chapter 191 of the Laws of 1888, entitled "An act to provide for the acquisition of sites for school buildings by the board of education of the city of New York." The Matter of Simmons (Askokan Reservoir), supra, was instituted under chapter 724 of the Laws of 1905, and the acts amendatory thereof, which provide for the acquisition by the city of New York of lands in order to obtain an additional supply of water, the provisions of which may be fairly claimed to support the inference that unless evidence is offered the commissioners of appraisal may make an award solely upon information gained at a view of the premises and their individual knowledge of the same.

It is contended, however, in behalf of the claimants, that the commissioners had it in their power in this case to wholly disregard the testimony of witnesses, and to base their awards upon information derived solely from a view of the premises. There probably would have been considerable force in this contention, had not, as already shown, the Greater New York charter changed the practice which theretofore obtained in proceedings of this character by requiring the commissioners to report the proceedings with the minutes of the testimony taken before them. The duty prescribed by section 1437 of the Greater New York charter of viewing the lands, tenements, hereditaments, and premises required for public uses and purposes does not, therefore, mean that the commissioners may base their award wholly upon the information obtained by them at the view, and disregard altogether the testimony taken in the proceedings before them. On the contrary, such "view" is for the purpose of enabling them to better understand the evidence (Perkins v. State of N. Y., 113 N. Y. 660, 21 N. E. 397; Matter of Thompson, 121 N. Y. 277, 24 N. E. 472; Man Ry. v. Comstock, 74 App. Div. 341, 77 N. Y. Supp. 416; Matter of St. Nicholas Park, N. Y. Law Journal, November 21, 1900; Matter of City of N. Y., Blackwell's Island Bridge, 91 N. E. 278. The Matter of Simmons (Askokan Reservoir) supra, is not opposed to these views, as might at first sight appear, but, on the contrary, they are confirmed by these words of the opinion of the court, at page 576 of 132 App. Div., and page 953 of 116 N. Y. Supp.:

"It is quite true that the commissioners are not at liberty to disregard the evidence which the parties produce. It is said that, although the commissioners may act upon knowledge acquired aliunde the record, knowledge, never-

theless, thus acquired, should only be used for the purpose of weighing and giving proper effect to the record evidence, and that their determination, when reviewed on appeal, must appear to have some support in the evidence appearing in the record.  It is urged that, when a party takes property by the right of eminent domain and produces evidence as to the value of such property, it may justly be assumed that the value thus fixed represents the minimum which a court should be willing to allow for property thus forcibly taken; that it is reasonable to assume that, when a party places a value upon property which he is willing to pay therefor and produces expert witnesses to establish such value, the value, as thus estimated, bears such an element of probability that it should be accepted.  We do not think that this case presents that question.  The order appealed from shows on its face that the appellant's property was assessed at $1,200.  This is some evidence of value appearing in the record which the commissioners are presumed to have considered, and we are not disposed to hold that $7,750 is an inadequate compensation for property assessed at $1,200 by public officers personally acquainted therewith."

Apart from any power expressly conferred by statute, the right to review the findings of commissioners in condemnation proceedings has uniformly been maintained in numerous cases in this department, as is evidenced by the following: In re N. Y., W. S. & B. R. R. v. Yates, 18 N. Y. Wkly. Dig. 272; Matter of N. Y. C. & H. R. R. R., 5 Hun, 105, affirmed 64 N. Y. 60; Matter of Com'rs of Public Parks Relative to Opening Railroad Ave. East, 47 Hun, 303; N. Y. C. & H. R. R. R. v. Rechnitz, N. Y. Law Journal, November 16, 1904; Matter of Acquiring Title to East 222d St., from Bronx River to Seventh St., 122 N. Y. Supp. 320.

In the Matter of Com'rs of Public Parks Relative to Opening Railroad Ave. East, supra, it was objected by the property owners that the commissioners had extraordinary powers, and therefore were the best judges of value, and Van Brunt, P. J., speaking for the court, at page 303 of 47 Hun, said:

"In answer to the first two objections above named, it is urged by the respondents that the decision of the commissioners of estimate and assessment herein cannot be reviewed by the court upon questions of fact.  *  *  *  We cannot admit that commissioners of estimate and assessment appointed under proceedings analogous to those in the case at bar are the autocrats possessing the arbitrary power which the rule contended for would bestow.  If that were the case, then the application to confirm the report would be an idle ceremony, and the court would be the mere clerk to record the decrees and mandates of these commissioners.  The law having provided that the report of these commissioners shall be presented to the court for confirmation, the power to refuse such confirmation where it would be inequitable and unjust so to do is necessarily conferred.  Equitable Life Assur. Soc'y v. Stevens, 63 N. Y. 341.  If this is not so, why the necessity of confirmation?"

It being thus established that the awards made by the commissioners are open to review, the several grounds of objection to the confirmation of their report will now be considered in detail.  It is urged by the city that the commissioners erred in awarding to the respective owners of damage parcels Nos. 24 and 42 a sum in each instance greater than said owners claimed, and by competent testimony on their part proved to be the fair market value of each of said parcels on the day title vested in the city.  Alvin Ohlsen, to whom the award for damage parcel No. 24 was made as owner, testified that he purchased the property on September 1, 1904, and less than 2½ years

prior to the vesting of title in the proceeding, namely, February 1, 1907. The only expert witness called by the owner testified that the fair market value of such parcel on said last-mentioned date was the sum of $16,400, and yet the commissioners awarded the sum of $18,-000, or $1,600 more than the owner claimed to be adequate compensation therefor, and $4,600 more than the expert witness called by the city estimated to be the value of the property. Mr. Justice Dowling, in the Matter of Acquiring Title to East 222d St., from the Bronx River to Seventh St., refused to confirm the report of the commissioners for the reason, among others, that in some cases awards were made in excess of what the experts for the property owners testified to be the fair market value thereof.

It is urged by counsel for the property owners that the Matter of Simmons (Askokan Reservoir) supra, by analogy sustains their contention that the commissioners may make an award in excess of the highest valuation of any of the owners' witnesses. There, as already stated, the lands taken were assessed for taxation at $1,200; but witnesses produced by the condemnor valued the same at $9,400. The commissioners had awarded $7,750, which was less than the estimated value of the property made by any witness who testified, including the witnesses produced by the municipality; but the Appellate Division refused to disturb the award as inadequate, holding that the fact that the property was assessed at $1,200 was some evidence of value, and that the commissioners were presumed to have considered such evidence. That, consequently, cannot be regarded as a case where the award of a sum less than was shown by any evidence was permitted to stand; but by implication it indicates the contrary. The Matter of the Mayor, 74 App. Div. 343, 77 N. Y. Supp. 566, is a case where it was distinctly held that an award less than the uncontradicted testimony given on behalf of the owner as to the value of the property in question, and also less than the estimate given by the city's expert, was inadequate, and should not be confirmed. I think the rule is a sound and reasonable one that both the municipality and the owner should be held to the testimony they respectively offer, and that neither an award in excess of what the owner claims nor one less than testified to by the city's witnesses should be allowed to stand. There are usually no formal pleadings in condemnation proceedings (2 Lewis on Eminent Domain [3d Ed.] § 645, p. 1113), and, if there were, the owner could not be allowed more than he claimed in his petition or pleading (Id. § 776, pp. 1379, 1380). There seems no reason why the parties should not be held equally bound by their proofs.

The counsel for the owners of the award for damage parcel No. 24, in a memorandum submitted by him, states that in order to avoid the expense of a new hearing he is willing to reduce the same to $16,000. If the city's officers will accept such offer, the parties may enter into a stipulation whereby the report of the commissioners may be amended, so as to reduce the amount accordingly (see Matter of Oliver St., etc., New York Law Journal, May 8, 1907); otherwise, the matter will be referred to new commissioners to reconsider the subject-matter thereof pursuant to section 1438a of the Greater New York charter.

As to damage parcel No. 42, Mr. Robert Huntley, one of the expert witnesses called by the owner, estimated it to be of the value of $25,400; the land in his opinion being of the value of $17,400 and the building adding $8,000 to the value of the land. Mr. Jacob Muller, a mason builder, testified as to the building erected upon the land as follows:

"It would cost to-day about $12,000 to build a house like this. The valuation of the house, it is worth anyhow $9,000 or $10,000."

Taking Mr. Huntley's estimation of the valuation of the land at $17,400, and the largest amount testified to by Mr. Muller as the value of the building, namely, $10,000, the utmost claimed by the owner as the value of the land and building was $27,400. These two witnesses were the only ones called on behalf of the owner of parcel No. 42. The commissioners awarded the sum of $28,000, $600 more than the owner's utmost calculation according to any theory. The city's expert estimated the value of the land and buildings considerably below the amount awarded. The owner insists that by resorting to the testimony of the experts who testified as to the value of adjoining land there is ample evidence to sustain the award as to parcel No. 42. In furtherance of such contention the owner argues that the commissioners had the right to view the property, and that they could see from an inspection thereof that the parcel in question was as to structure the same as that of the adjoining property, and that as to the land it was naturally of the same value as the parcels immediately adjoining. The difficulty with this contention, however, is that it appears from the record that the dimensions of the parcel and the character of the buildings erected on the latter were not the same as those on the adjoining lots. In other words, the physical situation, condition, and surroundings of the parcels are not alike.

The objection as to parcel No. 42 is therefore sustained, and unless the parties agree upon an amendment of the report, whereby the award will be reduced to a sum to be mutually agreed upon, the matter will be referred to new commissioners for further hearing.

The city claims the awards made by the commissioners for damage parcels Nos. 1, 2, 3, 5, 7, 9, 10, 11, 12, 13, 18, 19, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 43, 45, 46, 47, 48, and 49 are grossly in excess of the fair market value of the respective parcels. It has been frequently held that the awards of the commissioners made to owners whose land has been taken for a public use will be set aside where it is evident that they are grossly excessive, which fact indicates that the commissioners proceeded upon an erroneous theory. Matter of City of N. Y., Blackwell's Island Bridge, 118 App. Div. 272, 103 N. Y. Supp. 441; Matter of City of N. Y., Croton River Dam, 129 App. Div. 707, 114 N. Y. Supp. 75. In the Matter of City of N. Y., Blackwell's Island Bridge, 118 App. Div. 272, 274, 103 N. Y. Supp. 441, 443, supra, the court said:

"The comparison of the amounts awarded by the commissioners with the amounts paid in these 5 actual transactions out of a total of 13 parcels demonstrates that in allowing these excessive increases in the estimated value over the actual transactions the commissioners must have proceeded upon some erroneous theory."

In support of the contention that the awards are excessive it is urged by the corporation counsel that the awards as to certain damage parcels exceed the sum paid in each instance by the owner for such parcel. It appears from the evidence that damage parcel No. 5 was conveyed on March 1, 1906, to the present owner, pursuant to a contract for the purchase thereof, dated February 3, 1906, and that the consideration paid therefor was $20,000. According to the opinion of the expert witnesses who testified for the owner the value of such parcel on February 1, 1907, when the city took title, was $37,-500. One of the city's experts testified that it was $22,400, and the other $22,558. The commissioners awarded the sum of $25,500 for said parcel, and $26,500 for parcel No. 6, which adjoins it on the easterly side. The city has moved to confirm the report of the commissioners as to the latter. These parcels of land were of the same dimensions, and the apartment houses built thereon were of the same height, width, and depth, and the only reason I can discover from the record for the difference in the amount of the respective awards is that No. 6 is 25 feet nearer to the corner, and that one of the city's experts testified that its value was $1,000 greater than that of No. 5, and that it exceeded the latter in yearly rental value by $196. If the award for No. 6, which, as seen, seems to be satisfactory to the city, furnishes any criterion as to the value of similar parcels in the neighborhood, then the award made for parcel No. 5 was not excessive. It further appears that the award for the latter was only 13 per cent. above the valuation placed upon it by the city's experts. The objection to damage parcel No. 5 is therefore overruled.

Damage parcel No. 13 was purchased by the present owner on December 31, 1906, about one month before title vested in the city, for the sum of $40,000. One of the city's experts valued it at $41,000, and the other at $40,575, and the expert witness for the owner at $59,500. The commissioners awarded $46,000, or 15 per cent. in advance of the selling price and 12 per cent. more than the city's highest valuation at $41,000. The owner of damage parcel No. 25 testified that he purchased the same on March 15, 1906, for the sum of $37,000, and that afterwards he spent $300 or $400 in putting the property in good repair. The estimated value of the parcel when the city acquired title was placed at $52,000 by the owner's expert, and at $35,660 and $38,160, respectively, by the city's experts. The commissioners awarded $48,000, an advance of 25 per cent. over the purchase price, Lewis on Eminent Domain (3d Ed.) § 706, vol. 2, pp. 1227, 1228, says:

"In estimating the value of property taken for public use, it is the market value of the property which is to be considered. The market value of property is the price which it will bring when offered for sale by one who desires, but is not obliged, to sell it, and is bought by one who is under no necessity of having it."

The same principle was held operative in Matter of Simmons (Askokan Reservoir, Section No. 6), 130 App. Div. 350, 114 N. Y. Supp. 571, affirmed without opinion, 195 N. Y. 573, 88 N. E. 1132.

In Langdon v. Mayor, 59 Hun, 434, 437, 13 N. Y. Supp. 864, 865, the court said:

"The ordinary rule governing the measure of compensation is that he (the owner) shall be paid the market value of the property. Market value is ordinarily arrived at by conclusions deduced from transactions in property of a like character. Persons familiar with the property and with dealings in property of a like character are called upon to testify as to their opinion of its value; such opinion being based upon knowledge acquired by other transactions. Market value is a plain, definite term. A market signifies, not only that there shall be. sellers, but also that there shall be buyers, because there can be no market where everybody wants to buy and nobody wants to sell. * * * Due compensation means paying the full value, and value is determined by what a thing can be sold for."

In the same case in the Court of Appeals (133 N. Y. 628, 636, 31 N. E. 98, 101) the court said:

"The estimates of the so-called experts were largely theoretical, speculative, and not founded on actual sales of similar property, and were therefore unreliable as a measure of value."

The fair market value at the date of vesting of the title in this proceeding on February 1, 1907, of the property acquired, is therefore the measure of the compensation to be paid by the city therefor. It is well settled by numerous adjudications that the price paid upon the bona fide sale of the same property about the time of vesting of title in the city thereof furnishes some, although by no means conclusive, evidence as to its value. Matter of the Petition of the Citizens' Water Supply Co., 97 App. Div. 630, 89 N. Y. Supp. 1102; Knickerbocker Life Ins. Co. v. Nelson, 78 N. Y. 137, 144, 145; Parmenter v. Fitzpatrick, 135 N. Y. 190, 196, 31 N. E. 1032; Matter of Johnston, 144 N. Y. 563, 565, 39 N. E. 643; Rorke v. Kings County El. R. R., 22 App. Div. 511, 513, 48 N. Y. Supp. 42. In the Matter of the Petition of the Citizens' Water Supply Co., supra, the memorandum decision is as follows:

"Order confirming the report of the commissioners reversed, with $10 costs and disbursements, for the error at folio 138 in the rejection of evidence of the price paid by the owners for the lots involved in the condemnation proceedings. Proceedings remitted for a new appraisal before new commissioners to be appointed."

It was held in Knickerbocker Life Ins. Co. v. Nelson, supra, 78. N. Y., at page 144, that the price at which real estate sells upon a foreclosure sale is competent evidence as to its value; the court saying:

"It may be presumed that the property was advertised and sold in the usual manner and in such a way as to produce a fair competition among persons actually attending the sale, and that each party interested did all in his power to procure bidders. There is no evidence that the property on either occasion was sacrificed. The price, therefore, at which it sold, furnishes some evidence, although by no means conclusive, as to its value."

In Parmenter v. Fitzpatrick, supra, the court, at page 196 of 135 N. Y., and page 1033 of 31 N. E., said:

"It seems plain, however, that proof of a price obtained at an actual sale made bona fide, and not a sale which was in any way forced, would tend in the direction of proving or establishing a market price, and hence would be some evidence of the value of the property sold. It might not, and, indeed, it is not, claimed to be conclusive, but it seems to be competent upon that question. If there were no other evidence upon the subject, it certainly would

be sufficient for the jury to base a verdict upon, and if there were other and contradictory evidence, then it should be placed before the jury for its consideration upon the question of value. A market price is simply the result of sales of the same kind of property. In the ordinary case of purchase and sale of property, the fact that the purchaser and seller have met and agreed upon a price, and actually bought and sold the property at that price, ought to be in the nature of things some evidence of the value of that property which has thus changed hands in a bona fide transaction."

The court, in the Matter of Johnston, supra, at page 565 of 144 N. Y., and page 644 of 39 N. E., said:

"An exception was taken to the finding that the value of the interest of the intestate sold by the administrator to Kenny was the sum of $1,500, and it is now contended that there was no evidence to sustain such finding; that the evidence that Hart gave Mrs. Johnston $1,500 for her one-eighth interest was not competent and cannot be considered on the question of value. It appears to us that the testimony was competent and is some evidence of the value of the leasehold estate. It is true that the appellant purchased Mrs. Johnston's interest at private sale, but presumably he paid her no greater sum than he considered it worth. There is no pretense that any fraud or deception was practiced upon him, or that he was in any manner deceived as to its value. This was but nine days before he sold the interest belonging to the estate. The purchase was not remote, nor is there any claim of any change in the value of the property. It has been repeatedly held that the prices paid at auction or public sale tended to show the value of the property, and we fail to see why the principle upon which such decisions rest does not apply with equal force under the circumstances to the sale made by Mrs. Johnston to the appellant. In Parmenter v. Fitzpatrick, 135 N. Y. 190 [31 N. E. 1032], it was held that proof of the price obtained at an actual bona fide sale of property fairly conducted, and not forced, whether at auction or private sale, is competent upon the question of value. In Hoffman v. Conner, 76 N. Y. 121–124, the plaintiff, for the purpose of proving the value of property, was asked what she paid for it. This was objected to as incompetent, and the objection was overruled. The evidence was held competent that what a party paid for property 'is some evidence of its value.' See, also, Knickerbocker Life Ins. Co. v. Nelson, 78 N. Y. 137, 144; Campbell v. Woodworth, 20 N. Y. 499; Gill v. McNamee, 42 N. Y. 44–46."

In Rorke v. Kings County Elevated R. R., supra, which was brought to restrain the defendant from maintaining or operating their elevated railroad in front of the plaintiffs' premises and for fee and rental damage, the court, at page 513 of 22 App. Div., and page 44 of 48 N. Y. Supp., said:

"It appears that in 1890 the plaintiffs purchased the property at public auction for the sum of $18,300. This evidence was competent as bearing upon the question of value of the property at that time."

The general rule applicable to the said damage parcels is thus clearly summed up in Lewis on Eminent Domain:

"If the owner has purchased the property within a time so recent that its cost will afford any fair indication of its present value, it is competent to show the cost. So the cost of improvements recently put upon the property. If such evidence is received, it is competent for the opposite party to show any change of circumstances or condition or other facts which would tend to make the value at the time of the taking more or less than the cost proved." 2 Lewis on Eminent Domain (3d Ed.) § 664, p. 1144.

As seen, parcels Nos. 13 and 25 were purchased at a time shortly before the vesting of title in this proceeding, and there was no evidence that they were sacrificed, or that the sale of them was in any way

forced; nor were any circumstances shown which would bring the case within the exception to the general rule that the price paid when the property was sold furnished some evidence of its value. Neither was there any evidence adduced which tended to show that the general course of values in the neighborhood of the properties taken between the time of their purchase and the time when the city took title was such as to justify an award for such an increase over the purchase price thereof as was made to the owners of the parcels under consideration. While it would appear from the valuation placed upon the parcels by the expert witnesses who testified for the city that during the period in question there was some increase in the value of such property, the record, nevertheless, fails to disclose any evidence that the percentage of increase was sufficient to warrant the awards made therefor. The objections as to damage parcels Nos. 13 and 25 are therefore sustained, and the matters arising in relation thereto will be referred to new commissioners for further hearing.

It is urged by the corporation counsel that the awards for parcels Nos. 9, 10, 11, and 12 show that the latter were excessive when compared with the price paid by the city for damage parcel No. 8, which on its easterly side adjoins such parcels. The parcel so purchased by the city, however, was but 75 feet 5 inches deep, while the other four parcels were 100 feet 5 inches in depth. These parcels, including No. 8, were 25 feet wide, upon each of which was erected a four-story brick building of the same width and depth; and, under the circumstances disclosed, the awards made for said damage parcels Nos. 9, 10, 11, and 12 were less than their proportionate value when calculated upon the purchase so made by the city of parcel No. 8. The said objections to damage parcels Nos. 9, 10, 11, and 12 are therefore overruled.

The city objects to the award of $20,000 for damage parcel No. 18, because of the purchase by one Benjamin D. Jenkins of the fractional interest of certain heirs for $8,000, being $18/35$ of the property, and being at the rate of about $16,000 for the whole property. Mr. Jenkins' interest, however, is subject to the dower of Mary O'Reilly, widow of Thomas O'Reilly, deceased, in the entire $18/35$ interest, and is also subject to the dower of one Mary Brennan, widow of Charles D. Noiselle, deceased, in a $3/35$ interest. The award recites that the dower of said Mary O'Reilly has been "fixed at the sum of $100 per month, payable to her accordingly, by a judgment of this court filed and entered in the office of the clerk of the county of New York on the 9th day of March, 1892, in the action of Mary O'Reilly against Charles H. O'Reilly et al. The aforesaid award for parcel 18, together with the awards for parcels 19 and 21, shall bear and pay its proportion of the sum of $100 monthly to said Mary O'Reilly." The award further recites that the entire award of $20,000 is also subject to liens amounting to $284.63 in favor of certain persons, and to other liens aggregating the sum of $601.98. As the value of these dower rights, as well as the amount of these liens, must be fully paid before Mr. Jenkins can realize on his purchase, the award as to said parcel No. 18 appears to have been warranted.

Since parcels Nos. 19 and 20 were not alike, either as to location and dimensions of the lots or the character of the buildings thereon, I do not think the price paid by the city for the latter should be taken as a criterion of the value of the former. After reading the minutes of the testimony, I do not think that the commissioners were required to be guided solely by the city's analysis of such sale, and award only such a sum as would be based thereon. The mere fact that the award for parcel No. 19 is in excess of the estimate of value made by the city's experts does not require it to be rejected, as it was less than the estimate of the owner's witness. Matter of City of New York, Croton River Dam, 129 App. Div. 707, 114 N. Y. Supp. 75. I see no reason, therefore, for disturbing the award for damage parcel No. 19.

The objections made by the city to the award for parcel No. 43 are not well founded, for the reason that it satisfactorily appears from the evidence that the property was sacrificed when it was sold by the Jenny heirs in September, 1906, to what has been aptly described in one of the briefs as the "speculator's dummy." The mere fact that the award for parcel No. 44 was not increased by the commissioners after increasing the award for parcel No. 43 furnishes no ground for setting it aside, so long as it is warranted by the facts and circumstances proved. No one appears to have applied for an increase of the award for the former, and the city has moved to confirm the report of the commissioners as to the same.

After careful consideration, I am of the opinion that, as to damage parcels Nos. 1, 2, 3, 5, 7, 21, 22, 23, 26, 27, 28, 29, 30, 31, 33 34, 35, 36, 37, 38, 39, 40, 41, 45, 46, 47, and 49, the objections that the awards were excessive are not well founded, and the report as to the same should be confirmed.

The city makes no objection to the awards for the following parcels, and moves for the confirmation of the same, namely, Nos. 4, 6, 14, 15, 16, 17, 32, and 44, which motion is granted, except as to No. 32, to which, as well as No. 48, the owners oppose a confirmation, and which they insist should be referred to new commissioners for further hearing. The points raised by the owners as to such damage parcels Nos. 32 and 48 will be separately considered later on.

The corporation counsel insists that the commissioners erred in permitting architects to testify as to the structural value of the buildings on damage parcels Nos. 7, 28, 42, and 44. It appears that after some evidence of the structural cost or value of the buildings on parcels, the owners of which Mr. Walter B. Hopping represented, was admitted against the objection of the corporation counsel upon the authority of a Special Term decision, the decision of the Appellate Division in the Matter of City of New York (Blackwell's Island Bridge) supra, was rendered; but as soon as the corporation counsel called the commissioners' attention to that decision they reversed their previous ruling and excluded testimony as to structural value of such buildings. After Mr. Hopping had taken an exception to the ruling, the following stipulation was entered into, namely:

"It is stipulated that the same question, ruling and exception shall apply to all properties with improvements represented by Mr. Hopping."

No motion was made to strike out the testimony as to structural value; the corporation counsel evidently being content with the foregoing stipulation. Such stipulation, however, fairly supports the inference that the parties regarded all testimony relating to such subject as having been eliminated from the case. Mr. John F. Carew, the chairman of the commission, in a memorandum filed by him, states that after the decision of the Appellate Division was handed down all testimony bearing upon such proposition was "refused consideration" by the commissioners. Even if, as contended for by the corporation counsel, the memorandum of Chairman Carew is without legal effect (Robinson v. N. Y. El. R. R., 175 N. Y. 219, 223, 67 N. E. 431; Matter of N. Y., Lack. & Western R. R, 29 Hun, 1, 5), there is nothing in the record showing that the evidence as to structural value in any manner affected the award of the commissioners for the parcels under consideration. It was held in the Matter of City of N. Y. (Croton River Dam) supra, at page 710 of 129 App. Div., and page 77 of 114 N. Y. Supp., that:

"To warrant a reversal, it must appear, not only that improper testimony was admitted, but that it affected the result and directly resulted in an award which is an injustice to the one party or the other."

Applying such rule to the parcels Nos. 7, 28, 42, and 44 in question, the awards made therefor will not be set aside. Since the above was written the Court of Appeals (91 N. E. 278) has reversed the decision of the Appellate Division in the Matter of City of N. Y. (Blackwell's Island Bridge) 118 App. Div. 272, 103 N. Y. Supp. 441, holding that direct evidence of structural value is competent where the buildings are suitable to the land, as was the case here. Irrespective of what has been said above on the point, therefore, the admission of such evidence was not error.

The corporation counsel maintains that in making awards for parcels 1, 3, 5, 9, 12, 13, 22, 23, 27, 30, 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 45, 46, and 47, the commissioners adopted an erroneous principle, in that they based their awards for said parcels on the alleged incompetent testimony of Harry E. Zittel, the only expert witness who, it is claimed, testified as to the structural value of the buildings erected thereon. As was said in Matter of City of N. Y. (Croton River Dam) supra, at page 709 of 129 App. Div., and page 77 of 114 N. Y. Supp.:

"It is well settled that an award by commissioners will not be set aside, unless it affirmatively appears that they acted upon an erroneous principle. It is not enough that they may have so acted."

A reading of the record discloses that, aside from the alleged incompetent testimony as to the structural value of the buildings on the lands in question, there is sufficient competent testimony on the part of Mr. Zittel as to the value of such parcels, including the buildings thereon, quite irrespective of their structural value. Besides, under the very recent decision of the Court of Appeals in the Blackwell's Island Bridge Case, just above referred to, the evidence complained of was not improperly admitted.

The owners of damage parcels Nos. 32 and 48 contend that the commission was not legally constituted, because during the pendency of

these proceedings a decision was rendered by this court whereby Commissioner James G. Collins was reinstated as superintendent of highways, from which office he was removed by the president of the borough of Manhattan. It is, among other things, urged in opposition to this contention that Commissioner Collins was not disqualified from acting in these proceedings, and numerous cases have been cited in support of this position. But it is unnecessary to pass upon the point, in view of the fact that all objections to the propriety of Commissioner Collins' continuation as a commissioner in this proceeding were wholly cured and overcome by the stipulations and waivers on the record of the counsel for the respective parties, including those who represented the owners of the said last-mentioned damage parcels, as well as by their proceeding without objection before Commissioner Collins. Matter of Summit Ave., 35 Misc. Rep. 59, 71 N. Y. Supp. 207; 2 Lewis on Eminent Domain (3d Ed.) § 625, pp. 1086, 1087. Moreover, the objection to Commissioner Collins' qualifications was made for the first time when the report of the commissioners in this proceeding was presented for confirmation, and the objection is therefore in any case too late. Matter of Summit Ave., supra.

A contest has arisen between the owners of damage parcel No. 32 and the administratrix of the goods, chattels, and credits of one Max Bowsky, now deceased, who was the lessee of two of the buildings forming part of such parcel, regarding the award to her of $3,000 for certain trade fixtures placed therein by her intestate. The tenant entered into possession of the premises under a written lease dated September 30, 1895, which commenced on said date and terminated on May 1, 1903. When the term under the written lease expired, the tenant continued in possession from year to year; the last term expiring on May 1, 1907. The tenant, with the permission of the owners, made extensive improvements to the buildings by putting in, among other things, boilers, engines, shaftings, beltings, hangers, heaters, tank, steam heating plant, radiators, gas fixtures, etc., all of which were necessary for conducting the business of a fur dresser and dyer, and were in the buildings in question when the city acquired title on February 1, 1907, which, as seen, was before the tenant's term had expired. Upon the evidence disclosed by the record the commissioners were warranted in finding that such appliances, machinery, and additions constituted trade fixtures, and that hence the tenant was entitled to the benefit of the rule relating thereto. Such rule was stated by the court in Matter of City of N. Y. (Conron v. Glass) 192 N. Y. 295, 301, 84 N. E. 1105, 1107 (18 L. R. A. [N. S.] 423) to be as follows:

"As between landlord and tenant, the placing of machinery or other appliances by the tenant upon the leased premises for the purposes of trade or manufacture to be carried on by the tenant does not make the property so affixed a part of the freehold; but it still remains personally to such an extent, at least, that the tenant retains the right to remove it. The trade fixtures of a tenant, in other words, remain personal property in the eye of the law, so far as the right of removal is concerned."

The right to remove trade fixtures proceeds upon an entirely different theory from the right given to a tenant to remove fixtures which are distinctly realty. The former is given absolutely to the tenant, who;

even though his term has expired, has a reasonable time within which to remove such trade fixtures (Bernheimer v. Adams, 70 App. Div. 114, 119, 75 N. Y. Supp. 93, and citations), while the right to remove the latter "is in the nature of a license, and must be exercised while the tenant is in possession under the lease that grants it. Taking a new lease without reserving the right is deemed an abandonment thereof." Bernheimer v. Adams, supra, at page 122 of 70 App. Div., and page 98 of 75 N. Y. Supp., and cases there cited. The city took the entire buildings as they stood, including the trade fixtures therein, and for the purposes of this proceeding they must all be regarded as real property; that is, as between the tenant and the city, the trade fixtures were real property and must be paid for by the city the same as a building, and the tenant was under no more obligation to remove them than he would be to remove a building if he were the owner. As between the tenant and the owner, however, the trade fixtures were personalty, and could be removed, and therefore any award made for them would go to the tenant. In re Appointment of Park Commissioners (Super. Buff.) 1 N. Y. Supp. 763; Livingston v. Sulzer, 19 Hun, 375; Matter of City of New York (Conron v. Glass) supra.

For the purpose of this proceeding the trade fixtures were, therefore, real property, and were properly the subject of condemnation and award; but as between the owner and the tenant the rule as to trade fixtures applied, and the latter's personal representative was entitled to the award made separately for the fixtures so taken by the city. Upon the hearing before the commissioners experts valued the boilers, engines, etc., at $7,230.44; shaftings, beltings, hangers, heaters, tank, etc., at $5,486.06; steam heating plant, radiators, gas fixtures, etc., at $900—making a total of $13,588.50. The commissioners awarded to "Margaret Bowsky, as administratrix of the goods, chattels and credits of Max Bowsky, deceased, lessee of premises known as 309 and 311 East Fifty-Ninth street, being part of parcel No. 32, for machinery and fixtures, $3,000." The owners make the point that such award should not have been made, because Mr. Bowsky, the tenant, "remained in possession until the bridge structure was almost at his door, and until the old buildings were sold at public auction, and their demolition begun, and that during all of this time he made no effort to remove his property." As already shown, the tenant's term had not expired when the city acquired title, and he was therefore not required to remove from the buildings until the city took possession and required him to remove therefrom, pursuant to section 1439 of the Greater New York charter as amended by Laws 1905, c. 512. This section, so far as applicable, provides:

"And upon the vesting of said title, the said city, acting by and through the said department, board or officer conducting said proceeding, shall immediately take possession of the lands, included in the same and the interests thereby affected, without any suit or proceeding at law for that purpose. And all leases and other contracts in regard to said lands so taken, or any part thereof, and all covenants, contracts or engagements between landlords and tenants or any other contracting parties shall, upon the vesting of said title respectively cease and determine and be discharged according to law. All tenants in possession of said premises at the time of vesting title shall be and

become tenants at will of said city, unless within ten days after the vesting of said title they shall elect to vacate and give up their respective holdings."

The tenant is not obliged to remove trade fixtures attached to buildings erected upon lands required for a public use any more than is the owner to remove a building thereon. If the latter could be compelled to remove the building upon his land, then it might fairly be claimed that having removed it he can only be compensated for the land; because, after all, that is what the city needed for a public use, and not the building thereon, which must be demolished to make way for it. A rule to the contrary would be in direct violation of the fundamental principle pertaining to compensation to owners and others having an interest in lands taken for a public use. Such principle is formulated by Lewis in his work on Eminent Domain (volume 2 [3d Ed.] § 726, p. 1269) as follows:

"Ordinarily buildings are a part of land, and when land is taken for a public use the buildings and structures thereon are taken with it, and the whole must be paid for. They are to be valued as part of the realty, and not merely for the materials they contain, or for what they are worth for removal."

Another objection urged by the owners is that the claim asserted by the tenant was practically abandoned, and that they never had an opportunity of cross-examining him. It appears, however, from an examination of the minutes of the proceedings and the testimony, that the tenant died before his testimony was completed, and that upon his death the claim was reasserted by the administratrix of his estate, and further evidence was adduced by her in support of the claim after notice was given to the owners, whose counsel was present when it was given. The owners further object to the said award to the administratrix upon the ground that the commissioners had no right to deduct the amount thereof, namely, $3,000, from the sum of $155,500, which was their preliminary estimate of such owners' damage and award, such first-mentioned sum to the tenant's administratrix by their final report. When the commissioners made their preliminary report the owners had not made any claim for the trade fixtures, nor adduced any proof of the value thereof, nor added the same to the fee value of their lands with the erections and constructions thereon; but, as appears from the record, they had expressly excluded them. Neither did the city's experts include such fixtures in their estimate of the value of such parcel No. 32. The action of the commissioners in deducting the sum of $3,000 so awarded for trade fixtures from their preliminary estimate of the owners' damages resulting from the taking of the buildings does not appear to have been attempted to be justified on any other ground than that, when the commissioners determined that the administratrix of Max Bowsky, deceased, the tenant, was entitled to damages for trade fixtures, they felt that the amount so awarded therefor should be deducted from the amount they had previously announced was their estimate of the owners' damages. This was wholly unjustified, and the commissioners, therefore, erred in making such reduction.

The report as to damage parcel No. 32, except as to such fixtures, is therefore referred back to the same commissioners, in order that they

may revise and correct it as to such parcel by adding to the amount finally found in favor of Dennis G. Brussel and Herbert S. Brussel, as substituted trustees under the will of Adolph Brussel, owners, the sum of $3,000, so that their final award for it will be the sum of $155,500 instead of $152,500.

It will be noted that the separate finding of the commissioners made relative to trade fixtures has not been disturbed. The owners of damage parcel No. 48 urge that the award for the same is inadequate; but after a consideration of the evidence and the arguments of counsel for the respective parties made with respect thereto I see no reason for disturbing the findings of the commissioners as to the same.

The counsel for the owners of damage parcels Nos. 32 and 48 contend finally that costs should be allowed to them; but as there is no statute which provides for costs or allowances in this proceeding none can be allowed. Matter of City of Brooklyn, 148 N. Y. 107, 42 N. E. 413; Matter of Rapid Transit Railroad Com'rs, 197 N. Y. 81, 90 N. E. 456.

My conclusion, therefore, is that the report of the commissioners should be confirmed as to all damage parcels except Nos. 13, 24, 25, 32, and 42, with interest upon the respective sums finally awarded from February 1, 1907, to the date of payment of such awards, at the legal rate (see Greater New York Charter, § 1439, as amended by Laws 1905, c. 512); that the objections to the awards for damage parcels Nos. 24 and 42 should be sustained, and that unless the parties in interest will agree upon a reduction of the awards made therefor the matter will be referred to new commissioners to reconsider the subject-matter thereof; that the objection to damage parcels Nos. 13 and 25 should also be sustained, and that the matters arising in relation thereto will also be referred to new commissioners; and that the report as to damage parcel No. 32 should be referred back to the same commissioners for revisal and correction as above indicated.